UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

|   |   |
|---|---|
| HENRIETTA E. ARNOLD SIMPSON,<br><br>                            Plaintiff,<br>v.<br><br>MICHAEL J. ASTRUE,<br><br>                            Defendant. | Case No. 12-CV-733-JPS<br><br><br>ORDER |

       The plaintiff, Henrietta Simpson, filed her complaint in this matter on July 17, 2012. (Docket #1). Therein, she alleges that Administrative Law Judge Timothy Malloy committed reversible error in his opinion finding Ms. Simpson not disabled and, therefore, not entitled to Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). (Compl. ¶ 7). The parties have fully briefed this matter (Docket #12, #16, #18), and the Court has reviewed all of the submitted materials. Accordingly, the Court will now issue its decision.

1.     BACKGROUND

       In 2002, Ms. Simpson, was working as a Certified Nursing Assistant when a patient fell onto her right hand. (Tr. 33). This incident caused chronic pain in Ms. Simpson's hand, limiting her ability to use it. (Tr. 33). Eventually Ms. Simpson visited orthopedic surgeon Dr. Kevin Weidman, who performed surgery on Ms. Simpson's hand in March of 2003. (Tr. 33).

       Unfortunately, the surgery did not fix the pain or limitations in Ms. Simpson's hand. (Tr. 33). After the surgery, Ms. Simpson continued to exhibit difficulty in carrying out fine motor skills. (Docket #33).

Thus, Ms. Simpson underwent additional surgeries in 2005 and 2006. (Tr. 33). But, those surgeries did little to alleviate Ms. Simpson's pain and limitations. (Tr. 33).

Nonetheless, Dr. Weidman discharged Ms. Simpson from his care in March 2007, indicating that she could work at a sedentary level. (Tr. 33).

In 2008, Ms. Simpson worked part time—approximately fifteen hours per week—in Milwaukee Public Schools (MPS) assisting in lunch duty and also full time at a branch of the United States Postal Service. (Tr. 56). Ms. Simpson has testified that, in both positions, she had some difficulty performing her work and that she performed tasks in a way that would reduce her pain. (*See, e.g.*, Tr. 54, 59). In the summer of 2008, Ms. Simpson left her job at the post office, but nonetheless continued to work in MPS approximately fifteen hours per week—three hours every weekday.

At this time, Ms. Simpson filed her claims for DIB and SSI. She filed those claims on October 15, 2008, claiming disability beginning January 23, 2003. (Tr. 29).

Shortly thereafter, in January of 2009, Ms. Simpson began to visit Dr. Weidman again, due to a resurgence of pain in her hand. (Tr. 259). Dr. Weidman examined Ms. Simpson's hand and found likely metacarpal fusion. (Tr. 33). A later examination in September 2009 revealed severe degenerative changes in her hand. (Tr. 33). In relation to Ms. Simpson's claim for benefits, Dr. Weidman completed a questionnaire indicating that Ms. Simpson was capable of: lifting up to ten pounds; using her right hand to turn, twist, or grab 10% of the time; using of her right hand for fine manipulation 10% of the time; and would be unlikely to miss work due to her impairment. (Tr. 35).

However, during Ms. Simpson's treatment by Dr. Weidman, she was also undergoing a number of examinations from different doctors, including state agency physicians—and those physicians reached somewhat different conclusions than did Dr. Weidman. (Tr. 34–35 (discussing examinations of Drs. Mohammad Fareed, Pat Chan, and Bernard Stevens)). Specifically, Dr. Chan indicated that Ms. Simpson could perform light exertional activity with some manipulative limitations; Dr. Stevens supported this assessment. (Tr. 35). Dr. Fareed had previously opined that Ms. Simpson could lift fifty pounds with her left hand, but he did not provide an opinion on Ms. Simpson's work capacity.

With this medical evidence in tow, the Social Security Administration denied Ms. Simpson's claims both initially and upon reconsideration. (Tr. 29). Ms. Simpson then requested a review for a hearing before an ALJ, which was held on December 15, 2010. (Tr. 29).

In his March 11, 2011 opinion, the ALJ determined that Ms. Simpson is not disabled, and therefore denied her request for DIB and SSI. (Tr. 37). In reaching that opinion, the ALJ found that much of Dr. Weidman's opinion was not entitled to controlling weight, instead assigning "significant weight" to Dr. Weidman's opinion that Ms. Simpson would not miss work but "little weight" to the remainder of the opinion. (Tr. 35). The ALJ also determined that Ms. Simpson's own testimony was not credible, and therefore entitled to little weight. (Tr. 32–33).

Ms. Simpson requested review of that opinion, which the Social Security Appeals Council denied. (Tr. 2). She then appealed to this Court, which will now consider her assertions that the ALJ erred in reaching his decision. (Docket #1).

2. DISCUSSION

The Court must overturn the ALJ's decision if it determines that such decision is not supported by substantial evidence or is based on legal error. *Eads v. Secretary of Dept. of Health and Human Svcs.*, 983 F.3d 815, 817 (7th Cir. 1993); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Substantial evidence exists when "a reasonable mind might accept [it] as accurate to support a conclusion." *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir. 2000) (internal citations omitted). The Court cannot "decide the facts anew, re-weigh the evidence or substitute its own judgment for that of the Commissioner," but "a mere scintilla of proof will not suffice to uphold the [Social Security Administration's] findings." *Id.* (internal citations omitted).

Ms. Simpson alleges that the ALJ erred in two separate ways: first, he did not rely on sufficient evidence in discounting Dr. Weidman's opinion; and, second, his credibility determination was in error.

The Court agrees with Ms. Simpson on both accounts.

First, the ALJ did not rely on sufficient evidence in discounting Dr. Weidman's opinion. The ALJ's only stated rationale for denying weight to Dr. Weidman's opinion was that "[t]he evidence indicates that the claimant's activities of daily living, admitted abilities, and history of employment subsequent to the alleged onset date demonstrate a higher level of functioning than opined by Dr. Weidman." (Tr. 35).

All of those mentioned factors—activities of daily living, admitted abilities, and post-disability employment—are almost entirely irrelevant to the analysis. To begin, Ms. Simpson's household activities (such as doing a portion of the laundry, vacuuming with her left hand, grocery shopping,

Page 4 of 8

Case 2:12-cv-00733-JPS   Filed 01/25/13   Page 4 of 8   Document 19

occasional cooking, and watching her grandchildren) are hardly probative of any ability to use her right hand. (Tr. 72–73).

In fact, Ms. Simpson's statements regarding her household activities make clear that practically all of her household activities require that she modify them in a way that she does not use her right hand. (Tr. 72–73). Thus, her household activities are not inconsistent with Dr. Weidman's opinion, and accordingly the ALJ should not have relied upon them in denying weight to Dr. Weidman's opinion.

Similarly, Ms. Simpson's post-disability employment offers little, if any, support to the ALJ's determination that Dr. Weidman's opinion should be afforded little weight. Just as with her ability to perform household tasks, Ms. Simpson has modified her ability to work in a way that allows her to avoid use of her right hand. (Tr. 54, 59). Therefore, such post-disability work is not probative of an ability to use her right hand, and the ALJ's reliance thereon to find inconsistency with Dr. Weidman's opinion is misplaced.

As to Ms. Simpson's "admitted abilities"—that she can lift fifty pounds with her left hand and has learned to make functional accommodations to her work (Tr. 35)—they are entirely irrelevant to the substance of Dr. Weidman's opinion, which deals with Ms. Simpson's abilities in her right hand. It is beyond the Court's comprehension why, exactly, some capacity in Ms. Simpson's left hand should be looked at as discrediting Dr. Weidman's opinion on her right.

Finally, as to all of the factors relief upon by the ALJ in discounting Dr. Weidman's report—household activities, admitted abilities, and continued work—there are many reasons why a person would continue to complete them. Simply put, if one has no income and few people to rely on, then he or

she *must* work and perform household activities, simply to survive. Thus, even if one *does* perform those tasks, how probative of ability-to-function can those operations be when they are performed purely out of necessity and in great pain? It borders on the absurd to demand that a person forgo a job and household activities entirely while the (unbelievably lengthy) process of claims, denials, and appeals runs its course.

Having made these determinations, it is clear to this Court that, in fact, the ALJ's discounting Dr. Weidman's opinion relies upon practically nothing. At most, it relies upon a "mere scintilla" of evidence, which is insufficient to uphold an ALJ's determination. *Powers*, 207 F.3d at 434. Moreover, the ALJ made absolutely no mention of other relevant factors for evaluating medical opinions, such as Ms. Simpson's treating relationship with Dr. Weidman or the fact that Dr. Weidman is an orthopedic specialist. For all of these reasons, the Court is obliged to conclude that the ALJ committed reversible error in discounting the weight given to Dr. Weidman's medical opinion.

The ALJ also erred in reaching his credibility determination. To begin, his credibility determination used the same meaningless boilerplate that the Seventh Circuit has consistently frowned upon. (Tr. 32–33); *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). That fact, in and of itself, does not necessarily mean that the ALJ's credibility determination was in error. But, the ALJ provided no analysis of evidence besides that boilerplate language to have reached that credibility determination. The Commissioner argues that the ALJ supported his credibility determination by discussing Ms. Simpson's household activities, adjustments in functioning, work activities, and testimony on her own abilities. (Resp. at 16–17). There are two problems with that argument. First, the ALJ's credibility determination and his

Page 6 of 8

Case 2:12-cv-00733-JPS   Filed 01/25/13   Page 6 of 8   Document 19

discussion of household activities, etc., are not located near each other; therefore, the ALJ did not build the required accurate and logical bridge between the evidence and his determination, and consequently his credibility determination is in error. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Typically, a credibility determination is "considered a factual matter," *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 402 (1990), because the ALJ is "in the best position to determine a witness's truthfulness," *Shideler v. Astrue*, 688 F.3d 306, 310–11 (7th Cir. 2012); but, here, the ALJ did not provide any reason for his credibility determination—and certainly did not provide one that was dependent on his better observational positioning, such as regarding Ms. Simpson's demeanor or appearance—and so those considerations regarding credibility determinations need not apply. Finally, the Seventh Circuit has repeatedly taken issue with the habit of ALJs to recognize the difference between household activities and full-time employment, as well as to consider the full contours of one's employment. *Hughes v. Astrue*, No. 12-1873, at 5–6 (7th Cir. Jan. 16, 2013) (citing *Bjornson*, 671 F.3d at 647; *Craft*, 539 F.3d at 680; *Gentle v. Barnhart*, 430 F.3d 865, 867–68 (7th Cir. 2005); *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 248–49 (6th Cir. 2007); *Draper v. Barnhart*, 425 F.3d 1127, 1131 (8th Cir. 2005)); *Henderson v. Barnhart*, 349 F.3d 434, 435–36 (7th Cir. 2003) (citing *Hawkins v. First Union Corporation Long-Term Disability Plan*, 326 F.3d 914, 918 (7th Cir. 2003); *Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan*, 195 F.3d 975, 983 (7th Cir. 1999); *Wilder v. Apfel*, 153 F.3d 799, 801 (7th Cir. 1998); *Jones v. Shalala*, 21 F.3d 191, 192–93 (7th Cir.); *Kelly v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998)). Thus, the ALJ's credibility determination was also in error.

3. CONCLUSION

Having determined that both the ALJ's discounting of Dr. Weidman's opinion and his credibility determination were in error, the Court is obliged to vacate and remand this matter.

Accordingly,

IT IS ORDERED that the opinion of the ALJ be and the same is hereby VACATED and REMANDED for further proceedings consistent with this opinion.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 25th day of January, 2013.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge